### SCOTTISH UNION & NATIONAL INS. CO. v. McKONE.

(Circuit Court of Appeals, Eighth Circuit. November 15, 1915.)

#### No. 4371.

1. INSURANCE ⊚═165—FIRE POLICIES—MISTAKE IN DESCRIPTION.

Where a fire policy, which described the insured property as located on the southwest quarter of section 22, declared that insured's title to the land was under a homestead claim against the government, to be perfected, the true location of the homestead, which was located on the northwest quarter of such section, may, in an action on the policy, be shown to correct the description.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 351; Dec. Dig. ⊚═165.]

2. INSURANCE ⊚═561—FIRE POLICIES—ACTIONS—PROOFS OF LOSS—WAIVER.

Where the insurer received and retained proofs of loss, sent nearly a month after the fire, and dispatched an adjuster, who examined the insured under oath, the provision of the policy requiring insured to give immediate notice of loss was waived.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1406, 1407, 1409; Dec. Dig. ⊚═561.]

3. INSURANCE ⊚═668—FIRE POLICIES—ACTIONS—JURY QUESTION.

The question whether insured misrepresented the value of the property, and thus avoided the policy, under a clause declaring that concealment or

---

misrepresentation should invalidate it, *held*, under the evidence, for the jury.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1556, 1732–1770; Dec. Dig. ☞668.]

**4. EVIDENCE ☞318—TRIAL ☞48—HEARSAY—ADMISSIBILITY.**

Property located on a homestead claim was insured against fire. Proofs of homestead, consisting of affidavits, one by insured and two by others, which set up the destruction of the property before the policy was issued, were offered in an action on the fire policy. *Held*, that such affidavits were inadmissible; all having been offered together, and insured not having been shown to have been present when the affidavits of the other affiants were made.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1193–1200; Dec. Dig. ☞318; Trial, Cent. Dig. § 120; Dec. Dig. ☞48.]

**5. INSURANCE ☞668—FIRE POLICIES—ACTIONS—JURY QUESTION.**

As the credibility of witnesses is for the jury, the question whether the property was destroyed before the policy was issued is for the jury, where there was testimony of admissions by insured to that effect, though he contradicted it, and another witness testified the fire occurred after the policy was written.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1556, 1732–1770; Dec. Dig. ☞668.]

**6. EVIDENCE ☞359—PHOTOGRAPH—PREMISES INSURED.**

A photograph of the burned house, not objected to by insured, who merely claimed it did not correctly show the fireplace, is admissible, as throwing light on the value of the premises, which the insurer contended was misrepresented.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1509–1512; Dec. Dig. ☞359.]

In Error to the District Court of the United States for the District of Wyoming; John A. Riner, Judge.

Action by Sylvester M. McKone against the Scottish Union & National Insurance Company. There was a judgment for plaintiff, and defendant brings error. Reversed and remanded.

William A. Riner and Timothy F. Burke, both of Cheyenne, Wyo., for plaintiff in error.

M. C. Brown, of Laramie, Wyo., for defendant in error.

Before CARLAND, Circuit Judge, and AMIDON and VAN VAL-KENBURGH, District Judges.

CARLAND, Circuit Judge. This is an action brought by the defendant in error, hereinafter called the plaintiff, to recover of the plaintiff in error, hereinafter called the defendant, the value of a house and furniture contained therein, which it is claimed were destroyed by fire September 3, 1913, while covered by a policy of insurance made and delivered by defendant to plaintiff August 23, 1913. The plaintiff recovered a verdict, and the defendant brings the case here on error.

There was a general demurrer filed to the complaint in the court below, and the record shows that it was sustained. It does not appear, however, in what respect the complaint was claimed to be faulty. The complaint was not amended, so far as the record shows,

and both parties went to trial without objection upon the complaint as it now appears. The point is made now in this court that the complaint does not state facts sufficient to constitute a cause of action, in this: That it does not appear from the complaint that the furniture alleged to have been destroyed by fire was in the house at the time it was so destroyed. We think this objection is highly technical, and probably, if well taken, was aided by the verdict; but, as the case must be tried again, we pass the question, as the plaintiff will have ample opportunity to amend, if he is so advised.

[1] The policy of insurance insured the property described therein while located on the southwest quarter of section 22, township 18 north, range 72 west, about 20 miles northwest of Laramie, Wyo. Upon the trial the testimony showed that the property was located on the northwest quarter of the northwest quarter of said section, township, and range. The trial court allowed testimony to be introduced, over the objection of counsel for defendant, that the description of the land upon which the dwelling house was located as contained in the policy was a mistake, and that the insured gave to the agent of the company, who made out the application for the policy, the correct description. We do not think there was prejudicial error in this ruling of the court. The insurance policy contained the following clause:

"The assured's title to land. on which the insured property is located, is under homestead claim against U. S. government, title to be perfected within five years."

It thus appears that both parties knew that the insured property was upon the homestead claim, and the proof allowed to be introduced, as above stated, simply gave a correct description of that claim.

[2] The policy of insurance provided:

"If fire occur the insured shall give immediate notice of any loss thereby in writing to this company. * * * No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements."

Assuming that the fire which destroyed the property occurred on September 3, 1913, the plaintiff did not give the insurance company immediate notice of the loss, except as the proofs of loss required by the policy, which were forwarded to the defendant on September 29, 1913, may be considered such notice. The trial court held that these proofs of loss constituted such notice, and that such notice, given on September 29, 1913, would be an immediate notice under the terms of the policy. Whether this was the correct view to take of the matter we need not determine.

The proofs of loss were received by the insurance company and retained, and on September 27, 1913, one James Hopkins, an adjuster, acting for the defendant, was sent to the plaintiff, and examined him before a notary public touching the loss sustained by the fire. We think that the receiving of the proofs of loss without objection by the company, and the sending of an adjuster to the insured to examine him in connection with the loss, without any objection being made

as to the immediate written notice, constituted a waiver of the requirement of the policy in this respect.

[3] We now come to matters which are more serious. The policy contained this clause:

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstances concerning this insurance or the subject thereof."

It was pleaded in the answer of the insurance company that plaintiff's representation as to the cost of the building, made by the insured to the agent of the insurance company at the time the policy was issued, was untrue to the knowledge of the plaintiff, and that the building did not cost to exceed $2,300. The plaintiff testified in regard to this matter at the trial as follows:

"Q. Did Mr. E. A. McClure, the agent who issued this policy, ask you at the time you applied for the insurance what the cost of the building was? A. Yes. Q. What amount did you state to him? A. I told him between $3,200 and $3,300, if I remember rightly. Q. Did Mr. E. A. McClure, the agent of this company at the time you applied for this insurance, state to you that the company would not accept insurance for an amount in excess of three-fourths of the cost of the building? A. No, sir; he didn't. He stated to me that they wouldn't insure the building for over three-fourths of the actual value, or what it cost me. Q. Did Mr. E. A. McClure, the agent from whom you secured this policy, state to you at the time it was applied for that the company would not insure the contents of the building for more than three-fourths of the actual value? A. I think not. The same question applied to both the house and furniture. Q. Mr. McClure then stated to you that the company wouldn't insure the property, for which you applied for insurance, both building and contents, for more than three-fourths of the actual cash value? A. I don't think that is the way he stated it at all. Q. How do you recall he asked you this question? A. He didn't ask me a question. He made the statement: 'I suppose you understand an insurance company does not insure for more than three-fourths of the actual cash value.' I think that is the way it was put to me. I suppose by the actual cash value he meant what money was paid out and what the building really cost me, and I applied for insurance under that understanding. Q. Mr. McClure then stated to you that the company wouldn't insure the property to exceed three-fourths of its actual cash value? A. Of what the building cost."

The policy carried $2,500 on the building. C. H. Johnson, a witness produced by defendant, testified that he was the carpenter who built the dwelling house in question for the W. H. Holliday Company, and that the cost of the building was about $1,800, outside of the hauling and board. A. T. Foster, also a witness on behalf of the insurance company, testified that he was in the employ of the W. H. Holliday Company and was familiar with the material which went into the construction of the dwelling house that defendant insured. His testimony was to the effect that the cost of the building was about $1,850, including hauling. He also testified that the hauling of material for a house of this particular size would cost about $165. On this state of the record counsel for the insurance company requested the court to charge the jury as follows:

"You are instructed that if the plaintiff, Sylvester M. McKone, knowingly made to the agent of the defendant company a false and fraudulent statement of the actual cost of the property to be insured, in order to procure the insurance, then you are instructed that the plaintiff cannot recover in this action."

This request was refused, and an exception taken. The trial court of its own motion took every question of fact but that of damages from the jury, which action of the court was excepted to by counsel for the defendant. The trial court may have decided the question of fact correctly, but we are of the opinion that the defendant was entitled to have the question of overinsurance submitted to the jury; and it was clear error for the court to refuse to do so.

[4] The defendant also by its answer alleged that the property mentioned in the policy was never destroyed by fire during the life of the policy, or at all. The plaintiff testified that the house and its contents were destroyed September 3, 1913; and a witness by the name of Lueck, who was employed by plaintiff at the time the house burned, testified that the fire occurred the last of August or the first of September, not naming the year.

At the trial counsel for the insurance company offered in evidence certain homestead proofs made by the plaintiff on March 6, 1914. These proofs consisted of the affidavit of the plaintiff and two other witnesses, John Childress and William H. Bridger. These proofs were offered for the purpose of showing that it appeared therefrom that plaintiff and his witnesses, in making said proof, testified that the dwelling house located on the homestead was destroyed by fire on March 13, 1913, long before the policy sued upon was issued. The offer of this evidence was excluded by the court, and an exception taken by counsel for the insurance company. We think there was no error in this ruling, as it did not appear that the plaintiff was present when Childress and Bridger gave their proofs, or that he knew what they had testified to, and the three affidavits were offered together. The plaintiff's affidavit, no doubt, would have been admissible, if offered alone.

[5] However, John H. Symons, the United States commissioner who took the proof, testified without objection that, at the time he took the final homestead proof of the plaintiff, plaintiff swore that the house upon the homestead was destroyed by fire March 13, 1913. The plaintiff, at the time the homestead proofs were offered, and when counsel for the insurance company stated what they showed in regard to the date of the fire, said, if the proofs showed that fact, it was a mistake. The court charged the jury with reference to the date of the fire as follows:

"The petition alleges, and I think the proof clearly shows, that the building insured and its contents were destroyed by fire on the 3d day of September, 1913."

While the homestead proofs were excluded, the testimony of Symons that the plaintiff had stated under oath that the fire occurred March 13, 1913, remained. We think the credibility of the witness upon this proposition was a question for the jury to determine, and that it was error for the court to decide the question, and thereby prevent the jury from passing upon it.

[6] At the trial counsel for the defendant offered in evidence a photograph of the house alleged to have been destroyed by fire. There was no objection to it by counsel for plaintiff. The plaintiff

testified that the fireplace was on the wrong side, but it certainly was the house. The photograph was excluded by the court as being no evidence of value, to which ruling an exception was taken. The photograph appears in the record, and we cannot come to any other conclusion but that it might have aided the jury materially in arriving at the value of the house.

For the errors specified, the judgment below must be reversed, and a new trial ordered.

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes