**EVENT PRODUCERS, INC., Jorge Torres Caratini, Miguel Angel Ray and Jose Morales Ortiz, Plaintiffs,**

v.

**TYSER & CO., North America, Inc., Underwriters at Lloyds of London, Defendants.**

**Civ. No. 92–2148 GG.**

United States District Court, D. Puerto Rico.

Nov. 29, 1993.

Vicente Santori Coll, Vicente Santori Margarida, Victor J. Casal Vazquez, San Juan, PR, for plaintiff.

Manuel A. Quilichine, Hato Rey, PR, for defendant.

## OPINION & ORDER

GIERBOLINI, Chief Judge.

The above-captioned case illustrates the well-known principle that into each life a few drops of rain must fall. The action before the court involves a dispute surrounding the measurement of these drops. Plaintiffs have filed a claim for damages arising out of what plaintiffs allege to be defendant insurers' bad faith refusal to pay a claim under an insurance contract. Jurisdiction in this court is by virtue of diversity of citizenship under 28 U.S.C. § 1332.

Currently pending is a motion for summary judgment by defendants to dismiss the bad faith cause of action. Luckily, the relevant facts are largely undisputed; it is the inferences from these facts and the legal import of these inferences that raise the questions that the court must deal with. The question presented, whether a bad faith cause of action exists under the Puerto Rico insurance law, has not yet been decided by Puerto Rico courts.

### FINDINGS OF FACTS AND CONCLUSIONS OF LAW

Plaintiff Event Producers, Inc. (EVENT) is in the business of, unsurprisingly, producing events. The individual plaintiffs are all officers of EVENT. Defendants are insurance companies who issued a policy for EVENT on May 15, 1992. This policy was to

insure against rain at the parking lot of Hiram Bithorn Municipal Stadium (Bithorn) in San Juan during certain hours of May 22, 23, and 24 of 1992. During this time EVENT was intent on producing a music concert at this location, the Carnaval de Las Americas, at which many noted performers were to appear. In order to protect their investment against the damages to ticket sales typically caused by rain, always a danger in the San Juan area, EVENT took out insurance from defendants. This insurance provided that for each day of the concert in which more than 0.1 inches of rain fell during three or more of the hours of specified coverage, the sum of $250,000.00 would be paid by defendants. If there were to be clouds, plaintiffs wanted a silver lining to accompany them.

The insurance contract provided that an independent weather observer would be present at Bithorn at the covered times to determine whether or not the rainfall reached the level that would trigger coverage. (Docket Entry # 4, Ex. A, (Insurance Contract), General Condition 3). The insurance contract also provided that in the event of non-appearance of the agreed observer, then the agreed point of observation of rainfall would be The National Weather Service at San Juan International Airport. (Insurance Contract, General Condition 9). Antonio Castillo–Bonilla was selected from Sureweather, Inc. by the defendants to act as the independent weather observer (OBSERVER).

On May 22 and 23 the OBSERVER certified that the rainfall exceeded the levels needed to trigger coverage. Under the contract defendants were obligated to pay the sum of $500,000.00, or $250,000.00 for each day the rainfall exceeded the trigger level. On May 27, 1992, plaintiff Caratini, the President of EVENT, wrote to the issuers of the policy notifying them of the rain on these dates and of the certification of same by the OBSERVER. "We will appreciate that you proceed with the process and payment of the claim as soon as possible so that the negative economic impact and corporate image is as minimal as possible. If you need any additional information to expedite the payment of

the claim, we are at your service." (Exhibit C to Docket Entry # 4 (Translated)). Included in this letter was a copy of the OBSERVER's certification, signed by a police officer and by one of the plaintiff officers of EVENT.

Defendants, however, declined to pay upon immediate receipt of the May 27 letter. Instead, they began an investigation into the circumstances and started gathering weather data from the National Weather Service's San Juan office to corroborate the claim of rain. They retained Prof. Herbert Spiegel, president of Hilkar Consulting, Co., to verify the amount of rain that plaintiffs claimed fell on the covered dates. He ascertained that the National Weather Services San Juan Airport data indicated that the rain was less than that needed to trigger coverage. Additionally, Prof. Spiegel's analysis of data provided by the National Climactic Service in Asheville, South Carolina, indicated that San Juan did not receive the level of rainfall required under the contract to trigger coverage. This information was made available to Prof. Spiegel around June 22, 1992, by Federal Express. Defendants argue that they became concerned that the OBSERVER had been induced to provide a fraudulent certification. Under the antifraud provision of the policy, the entire insurance contract would be void. Defendants' suspicions were further heightened by the fact that the OBSERVER never sought to obtain payment from Tyser, one of the defendant insurers, for his services.

On August 18, 1992, plaintiffs commenced the instant action with the filing of their complaint. The policy limits of $500,000.00 were paid on October 7, 1992. What remains is a tort cause of action charging defendants with a bad faith refusal to pay. Plaintiffs allege that due to defendants' "undue delay" in paying, defendants have "caused the corporation and the individuals who form part of this corporation damages based on loss of reputation, loss of earnings, mental anguish, attorney's fees and costs." (Docket Entry 9, p. 3).

Defendants sum up plaintiffs' case quite nicely: Since defendants hired the OBSERVER, they were barred from attempting to

corroborate his findings, especially since the contract did not explicitly provide for such corroboration. Since there were no reasonable grounds to suggest the need for an independent investigation, the delay in paying the insurance proceeds constitutes bad faith by defendants. (See Defendants' Reply to Plaintiffs' Opposition to Request for Summary Judgment, 1). Defendants justify their actions by maintaining that every insurance policy contains an implied right to verify the circumstances triggering coverage, and that the relevant circumstances raised a reasonable inference of fraud such that the entire policy would be voided. Defendants have argued that their investigation of the claim and the delay in paying were reasonable under the circumstances and that therefore the bad faith cause of action should be dismissed. For the following reasons, we dismiss plaintiff's claim. We find that even under such a cause of action, plaintiffs' bad faith cause of action should be dismissed.

## DISCUSSION

■ Puerto Rico courts have not yet decided whether a tort action will lie for an insurer's wrongful refusal to pay an insurance claim. Prior federal courts that have grappled with this question have decided that it is likely that Puerto Rico courts would limit such actions to the law of contract. See *Noble v. Corporación Insular de Seguros,* 738 F.2d 51 (1st Cir.1984). A federal court sitting in diversity should be reluctant to construe state law when the state courts have not spoken directly to the issue at hand. However, we can avoid the dilemma of going further than the state courts would in this case, because the facts at bar indicate that even if such an action existed, the plaintiffs have not alleged sufficient information to sustain it. We hold that even if a tort cause of action for bad faith refusal did exist, plaintiffs' claim must be dismissed anyway.

Two questions are presented: (1) Does a cause of action exist in Puerto Rico for an insured to sue her insurer for a bad faith refusal to pay? and (2) If such an action is maintainable, do plaintiffs adduce evidence sufficient to withstand defendants' summary judgment motion?

■ Both parties agree that there is no Puerto Rico case law directly on this issue. The field of insurance is governed by the Insurance Code, which has no direct provision for such an action. Where the Code is silent, the practice of the Puerto Rico Supreme Court "has been to use the most advanced rules in North American law and civil law.... In the proper occasions it is convenient to resort to those law systems in search of guidance." *San Juan v. Great American Ins. Co.,* 813 F.2d 520 (1986). The contours of a bad faith cause of action will be distilled by combining a careful scrutiny into state law trends with an analysis of Spanish and Puerto Rican law in general concerning bad faith in the performance of a contract.

Under Civil Law, the English language notion of "bad faith" (or "mala fe" in Spanish) is encapsulated by the concept of "dolo." *Canales v. Pan American,* 112 D.P.R. 329, 340 ("El dolo en el cumplimiento de las obligaciones se equipara con la mala fe"). Puerto Rico law in this regard is influenced and informed by French law as interpreted by the Spanish civil law. *Id.* Dolo is also equivalent to the concept of dolus as found in Roman law.

Dolo entails a malicious intent to do harm, and is thus differentiated from mere negligence. See 19 Q.M. Scaevola, *Código Civil,* 617 (2d Ed.1957). It implies will, and not merely omission. III–1 Vazquez Bote, *Derecho Civil de Puerto Rico,* 241–42 (Ediciones Jurídicas 1973).

Given the outline of what is meant by bad faith in contracts in general, we must now examine the particulars of insurance contracts. We look to the laws of the various states to determine the parameters of the bad faith cause of action. The Ohio Supreme Court has decided that such an action is allowed under Ohio law, and in doing so has echoed important components of our Civil Law heritage. In allowing such actions, it noted that bad faith "embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Hoskins v. Aetna Life Ins. Co.,* 6 Ohio St.3d 272, 276, 6 OBR 337,

340, 452 N.E.2d 1315, 1320 (1983) (citations omitted).

Wisconsin has a similar action. Under Wisconsin law the insured must demonstrate "(1) the absence of any reasonable basis by the insurer for denying the benefits of the policy to the insured; and (2) the insurer's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Duir v. John Alden Life Ins. Co.,* 754 F.2d 245, 249 (7th Cir.1985) (citing *Anderson v. Continental Insurance Co.,* 85 Wis.2d 675, 271 N.W.2d 368, 376 (1978)). In Rhode Island as well, bad faith requires a reckless indifference to the facts or lack of a reasonable basis for the insurer's actions. See *Voccio v. Reliance Ins. Cos.,* 703 F.2d 1, 2 (1st Cir.1983). In general, the trend among the states is to allow such an action. Ashley, *Bad Faith Actions* § 2:15 (1991).

Thus, given the trend in other states and the general tendency in Puerto Rico to protect consumers, we find that there can be a bad faith action against an insurer, and that Puerto Rico's Supreme Court would so declare. The standard would be either conscious wrongdoing, reckless indifference or the lack of a reasonable basis for denying claim. We then must analyze plaintiff's case in light of these standards and the scope of summary judgment.

■ The standards for summary judgment should be well known by now. The decision whether or not to grant summary judgment rests on a determination as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). Summary judgment is an appropriate remedy "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Not all conflicts of fact will bar summary judgment: "By its very terms, this standard

provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, the requirement is that there is no *genuine* issue of *material* fact." *Liberty Lobby,* 477 U.S. at 247, 248, 106 S.Ct. at 2509, 2510 (emphasis in original); *see also Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 7–8 (1st Cir.1990). For a dispute to be "genuine" its presence must be sufficient that the trier of fact could resolve it in favor of the party opposing the motion. *Nereida–González v. Tirado–Delgado,* 990 F.2d 701, 703 (1st Cir. 1993). "A factual dispute is material if it affects the outcome of the litigation, and genuine if manifested by substantial evidence going beyond the allegations of the complaint". *Boston Athletic Ass'n v. Sullivan,* 867 F.2d 22, 24 (1st Cir.1989), citing *Astra Pharmaceutical Products, Inc. v. Beckman Instruments, Inc.,* 718 F.2d 1201, 1204 (1st Cir.1983).

■ The nonmoving party bears the burden of production of showing that summary judgment is not appropriate by coming forward with specific facts showing that there is a genuine issue for trial; it is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 587, 106 S.Ct. 1348, 1355, 1356, 89 L.Ed.2d 538 (1986); *R.J. Reynolds,* 896 F.2d at 8.

■ In deciding whether summary judgment is proper, the court must view the record in the light most favorable to the party opposing such motion. However, a nonmoving party's evidence cannot be merely colorable, but must be sufficiently probative to show differing versions of the facts which justify a trial. "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *R.J. Reynolds,* 896 F.2d at 8, 10; *see also Oliver v. Digital Equipment Corp.,* 846 F.2d 103, 109–110 (1st Cir.1988).

■ While the initial burden rests upon the moving party, once the moving party avers an absence of material facts that might support the claim of the party opposing the motion, the opponent must, *where he bears the ultimate burden of proof at trial*, present definite and competent evidence sufficient to rebut the motion. *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir.1993); *Fragoso v. López*, 991 F.2d 878, 886–87 (1st Cir.1993). When the nonmoving party fails to make a sufficient showing as to an element of its case upon which it bears the burden of proof, summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

Therefore, given the burdens incumbent upon plaintiffs to present sufficiently probative evidence to allow their bad faith cause of action to survive, see *Canales v. Pan American*, 112 D.P.R. at 340, there must be present in the record some indication that there was either conscious wrongdoing on the part of defendants, some dishonest purpose, *Hoskins v. Aetna Life Ins.*, 452 N.E.2d at 1320, or the absence of any reasonable basis for denying benefit and the knowledge or reckless disregard of this lack by insurer, *Duir*, 754 F.2d at 249; *Voccio*, 703 F.2d at 2.

■ We believe that the Puerto Rico courts would place especial emphasis on the wilful nature of the insurer's failure to pay on a claim, given the importance of Spanish law antecedents in Puerto Rico and the nature of dolo. See IV–1 Puig Peña *Tratado de Derecho Española*, 280 (2d Ed.1974 Madrid). We find nothing in the record that even alleges conscious wrongdoing on the part of defendants. Therefore in order to preserve their claim plaintiffs must allege sufficient facts to give rise to an inference, when the evidence is taken in the light most favorable to them, of a lack of a reasonable basis for denying plaintiffs' claim. This we find also lacking.

We must, of course, look to Puerto Rico law to ascertain whether defendants' actions were reasonable. Puerto Rico law closely regulates the insurance market and the investigation of insurance claims. The Insurance Code, 26 L.P.R.A. § 101, et seq. controls the handling of insurance claims.

Article 27.161 recognizes the right of the insurer to duly investigate claims. Under 26 L.P.R.A. § 2716a(3), it is an unfair practice for the insurer to "fail to adopt and implement reasonable methods for the expeditious investigation of claims which may arise from the terms of a policy." Furthermore, 26 L.P.R.A. § 2716a(4) makes it an unfair practice to "refuse to pay a claim without carrying out a reasonable investigation based on the information available."

The clear intent of these sections is to allow an insurer to investigate claims but to limit the investigation to that reasonably required under the circumstances and to set a time limit for such investigation. Under 26 L.P.R.A. § 2716b "the investigation, adjustment and resolution of any claim must be done within 45 days after all necessary documents needed to resolve the claim have been submitted to the insurer. This period may be extended only for extraordinary circumstances, but may never exceed 90 days from the date the claim was submitted."

Defendants contend that the discrepancy between the reports of the onsite OBSERVER and the weather services provided the extraordinary circumstances warranting the allowance of 90 days for investigation. Furthermore, defendants claim that the time limit began to run not on May 27, 1992, when they received the letter from plaintiffs but from June 15, 1992, when the final affidavits certifying the loss were forwarded to defendants. Even if the 90 days ran from May 27, 1992, it would then have run out on August 25, thus making the August 18 complaint premature. The filing of the complaint is argued to provide reason for not paying immediately. We agree.

Defendants' behavior was appropriate and reasonable under the circumstances, and not at all reckless. As they assert, there was no contractual language which bound them to accept the OBSERVER's certification as determinative and automatically binding.

Plaintiffs argue that since the OBSERVER was present, there was no right of defendants to utilize the Airport Weather Data or other services or in any way to investigate the claim. Since the OBSERVER, chosen by defendants, appeared and took the measure-

ment, the claim should have been paid immediately upon receipt thereof. The sole criterion for coverage—rainfall of a set amount—occurred. There is, according to EVENT, nothing further to investigate. We disagree.

■ There must be an implied right to investigate claims. The Puerto Rico Insurance Code makes explicit provision therefor. Without such a right, the writing of an insurance contract would be extremely risky. Given the circumstances noted above, we would have been surprised had the insurer failed to investigate. It is clear from the record and the facts noted by plaintiffs that defendants conducted a reasonable investigation as expeditiously as possible. There is no evidence to suggest that the insurers were in any way reckless or immoral or even negligent in their investigation. For these reasons, we dismiss the bad faith cause of action.

### CONCLUSION

We DISMISS plaintiffs' bad faith cause of action for the reasons noted above. Plaintiffs are to inform the court within 15 days of receipt of this ORDER and OPINION of what, if anything, remains of their claims against defendants. Judgment will be entered accordingly.

**SO ORDERED.**