272 N.J. Super. 41 (1994)
639 A.2d 338
KARANNE WOLPAW, PLAINTIFF-RESPONDENT,
v.
GENERAL ACCIDENT INSURANCE COMPANY, DEFENDANT/THIRD-PARTY PLAINTIFF/APPELLANT,
v.
PARKER, McCAY & CRISCUOLO, THIRD-PARTY DEFENDANT/RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 1, 1994.
Decided March 25, 1994.
*43 Before Judges BRODY, STERN and KEEFE.
Elliott Abrutyn argued the cause for appellant (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys; Mr. Abrutyn and Joseph G. Dolan, on the brief).
Harry V. Osborne, II, argued the cause for respondent Karanne Wolpaw (Evans, Osborne & Kreizman, attorneys; Mr. Osborne, on the brief).
Robert W. McAndrew argued the cause for respondent Parker, McCay & Criscuolo (Voorhees & Acciavatti, attorneys; Mr. McAndrew, on the letter brief).
The opinion of the court was delivered by BRODY, P.J.A.D.
Defendant issued a homeowners' policy to Saranne Frew. Other members of Frew's household covered by the policy were plaintiff, who is Frew's sister, and plaintiff's son Heath. All three were sued in a personal-injury action for their allegedly negligent *44 conduct during the term of the policy. Defendant assigned the same firm of attorneys, third-party defendants Parker, McCay and Criscuolo, Esqs., to represent the three insureds even though their interests as defendants in that action were in conflict. Plaintiff brought this action to compel defendant to pay the substantial portion of the negligence-action judgment entered against her that exceeds the policy limit. We agree with the trial judge that defendant breached the policy by assigning a single firm of attorneys to represent insureds having conflicting interests. We disagree, however, with the judge's conclusion that defendant is thereby liable for the entire negligence-action judgment. Defendant's liability is limited to the portion of plaintiff's actual loss attributable to the breach.
On January 9, 1986, plaintiff's eleven-year-old son Heath accidently fired a BB from an air rifle that put out an eye of his playmate and neighbor Michael Heim. Plaintiff was divorced from Heath's father Ivan Wolpaw at the time and lived with Heath in the home of her sister Saranne Frew. Plaintiff, her sister and Heath were covered for the accident under a $50,000 homeowners' policy that defendant General Accident Insurance Company had issued to Frew. Michael and his parents brought an action for the ensuing damages against plaintiff, Heath, Frew, Ivan, the rifle's manufacturer, and the store where Ivan had purchased the rifle as a gift for his son. Defendant immediately deposited in court the $50,000 limit of its policy in offer of settlement. The Heims rejected the offer. A jury awarded the Heims damages totalling $502,000 after finding plaintiff 50% negligent, Ivan 30% negligent and Heath 20% negligent. The jury absolved the manufacturer and the store. The claims against Frew had been dismissed before trial on her motion for a partial summary judgment.
In this action, the trial judge held, on plaintiff's motion for summary judgment, that defendant had breached its policy by providing a single firm of attorneys to represent insureds having conflicting interests and thereby became liable to pay the full amount of the Heim judgment, including prejudgment and post-judgment *45 interest. The judge accordingly entered partial summary judgment against defendant in the amount of $709,964.20 and certified it as final, thus enabling defendant to take this appeal. R. 4:42-2. Defendant's third-party indemnification claims against the law firm, against whom plaintiff has made no claims, remain to be tried.
A liability insurer that insures codefendants whose interests conflict with one another must retain separate and independent counsel for each insured or permit each insured to do so at the insurer's expense. See Yeomans v. Allstate Insurance Company, 130 N.J. Super. 48, 54, 324 A.2d 906 (App.Div. 1974). That was the case here. The three insureds had the common interests of minimizing the amount of the Heims's judgment and maximizing the percentage of fault attributable to the other defendants. However, their interests in maximizing the percentage of the other insureds' fault and minimizing their own were clearly in conflict. For instance, it was in plaintiff's interest to argue that she adequately had secured the rifle from Heath's unattended use and had carefully instructed him in its safe use, which he negligently disregarded; on the other hand, it was in Heath's interest to argue that plaintiff negligently failed to secure the rifle, and that he was not negligent in view of his mother's negligence and his youth.
With the general abolition of parental immunity, Foldi v. Jeffries, 93 N.J. 533, 461 A.2d 1145 (1983), and in the absence of sufficient liability insurance coverage, separate attorneys representing plaintiff and Heath might well have asserted cross-claims for contribution against the other's client. That was not done here. It was also in plaintiff's interest to assert a cross-claim against her sister and that she remain a codefendant to share the liability burden. Yet the single firm of attorneys, discharging its duty to her sister, not only did not file a cross-claim for contribution on plaintiff's behalf, but successfully moved to have Frew dismissed from the case. A trial is not necessary to determine the obvious. Judson v. Peoples Bank & Trust Co. of Westfield, 17 *46 N.J. 67, 110 A.2d 24 (1954). Defendant violated its contractual duty to provide plaintiff with counsel who were free of conflicting interests.
Where conflicting interests impose on a liability insurer the duty to provide multiple insureds with separate counsel, it may be that in a particular case the separate attorneys would manage the case the same way as one attorney representing all insureds. Even so, where there is the risk of a judgment that will exceed the policy limit, separate independent counsel for each insured must be employed to decide whether and how to act in light of the conflict.
A conflict that forms the basis of an insurer's breach, however, does not establish that compensatory damages are to be awarded against the insurer if the breach did not cause the insured an actual loss. The trial judge awarded plaintiff the full amount of the Heim judgment, many times more than the policy limit, after concluding that there is no way to calculate how much of the Heim judgment was caused by defendant's breach. He concluded that because it was impossible to measure plaintiff's loss by retrying the Heim case with separate counsel for each insured, defendant must pay the whole judgment. We disagree.
The object in awarding compensatory damages for a breach of contract is to put the injured party in as good a position as he or she would have been if performance had been rendered as promised. 525 Main Street Corp. v. Eagle Roofing Co., 34 N.J. 251, 254, 168 A.2d 33 (1961). That objective is not achieved by using the same approach in every type of case. "The answer rests in good sense rather than in a mechanical application of a single formula." Id. at 255, 168 A.2d 33. Nor must the formula yield an exact figure:
While the damages flowing from defendant's breach of contract are not ascertainable with exactitude, such is not a bar to relief. Where a wrong has been committed, and it is certain that damages have resulted, mere uncertainty as to the amount will not preclude recovery  courts will fashion a remedy even though the proof on damages is inexact. [Kozlowski v. Kozlowski, 80 N.J. 378, 388, 403 A.2d 902 (1979).]
*47 Although it may not be certain that an injured party sustained damages from a breach, where the breach itself destroys the injured party's ability to prove damages with exactitude, the proof may be inexact. This tolerant approach has been applied to the proof of damages where, as here, a liability insurer breached its policy. Lieberman v. Employers Ins. of Wausau, 84 N.J. 325, 419 A.2d 417 (1980) (more fully discussed below).
The trial judge correctly identified the problem. To take an accurate measure of what plaintiff lost requires the impossible: retrying the Heim case with each insured having separate counsel. A retrial cannot even be approximated as might be done had the flaw been with a plaintiff's attorney and not a defendant's attorney. In such a case damages in a legal malpractice action can often be approximated by having the successor plaintiff's attorney recreate or create a defective or time-barred tort trial by conducting a "suit within a suit" in which the flawed attorney plays the role of the tort defendant. See Gautam v. De Luca, 215 N.J. Super. 388, 397-98, 521 A.2d 1343 (App.Div. 1987). However, where the flawed attorney had represented a defendant, as here, there is no one to play the role of the tort plaintiff making claims to which the successor defense attorney may respond.
In Lieberman, supra, the insured was a medical doctor who had been sued for malpractice. His insurer and the attorney furnished by the insurer to represent him settled the malpractice action over the doctor's objection, a breach of the policy and of the attorney's duty to put the insured's interests above those of the insurer. The doctor sued the insurer and the attorney. Damages sought included the amount of a substantial increase in the insurance premium on renewal of the policy because the settlement exceeded $3,500. To recover such damages, plaintiff had to prove that had the case gone to trial, the tort plaintiff would not have recovered more than $3,500.
The Court left it to the parties or, in the absence of agreement, to the trial judge to determine how the insured should be permitted to prove the outcome of a trial that never occurred. Among *48 the Court's comments appropriate to the present case are the following:
On retrial, [the doctor] must show by a preponderance of the evidence what injuries he suffered as a proximate consequence of the respective contractual and professional breaches of [the insurer and the attorney].
* * * * * * * *
We conclude, therefore, that it should be within the discretion of the trial judge as to the manner in which the plaintiff may proceed to prove his claim for damages and that the appropriate procedure should, if not otherwise agreed upon between the parties, be settled through pretrial proceedings. We need not here delineate in final detail what alternatives must be considered except to observe that they include the "suit within a suit" approach or any reasonable modification thereof. Another option, which may be apposite in this case in light of the duality of defendants, the factor of role reversal, and the passage of time, is to proceed through the use of expert testimony as to what as a matter of reasonable probability would have transpired at the original trial. [Citation omitted.] Such experts would testify, in light of their experience and expertise, concerning the outcome of the [malpractice case] if the case had been brought to trial as anticipated by [the attorney] and had been defended in the manner [the attorney] had initially planned. [Id. at 342-44, 521 A.2d 1343]
On remand, the trial judge here should confer with counsel and set a deadline for them to agree upon how to proceed with the proof of damages and when to conduct and complete pretrial discovery. If there is no agreement by the deadline, the judge must determine these matters after considering both sides' arguments.
We add the following observations respecting the damages trial. Although conflicts that formed the basis of the breach may have caused plaintiff's former attorneys to pull their punches against the other insureds whom they also represented, the conflicts did not affect the common purpose of all the insureds to present a united front against the other parties in the case. Thus there is no reason to consider whether if plaintiff had separate counsel at the tort trial, the amount of the Heim judgment would have been less or the dispositions respecting the defendants, other than the insureds, would have been different.
If the parties use experts to express opinions as to whether or as to how having separate counsel probably would have changed the Heim judgment, their opinions must be confined to changes in *49 the allocation of fault among the three insureds. In translating such changes into plaintiff's damages, consideration must be given to the provisions of the comparative negligence statute, N.J.S.A. 2A:15-5.1 to -5.4. The statute was amended December 18, 1987. L. 1987, c. 325. The former version applies here because the Heims's claims arose before that date. L. 1987, c. 325, § 4. The former version of N.J.S.A. 2A:15-5.3 provided:
The party so recovering [damages in a negligence action] may recover the full amount of the molded verdict from any party against whom such recovering party is not barred from recovery. Any party who is so compelled to pay more than such party's percentage share may seek contribution from the other joint tortfeasors.
[L. 1973, c. 146, § 3.]
Thus, regardless of any reduction in the percentage share of plaintiff's fault, she would remain liable to the Heims for the full amount of their judgment unless but for defendant's breach the jury probably would have found that she was not at fault. Had plaintiff, if properly represented, been absolved of all fault then defendant would be liable to pay the whole judgment on her behalf  including the substantial excess over the policy limit.[1]
Assuming plaintiff would not have been absolved of all fault if she had separate counsel at the tort trial, her damages, had the jury assigned to her a reduced percentage of fault, would be the loss of contribution that she would have recovered from one or both of the other two insureds. To establish this result, plaintiff would have to prove that if she had separate counsel, her sister's share of fault probably would have been more than zero and/or her son's more than 20%.
Plaintiff must surmount another hurdle in evaluating her lost opportunity to obtain contribution from her sister and son. To the extent that each of these codefendants is judgment-proof, the *50 right to recover against her or him may be worth little. We have held in a malpractice action against an attorney who missed a limitations deadline that the amount of damages determined in a suit within a suit may be reduced by "evidence of the main [tort] defendant's financial status and solvency ..." Hoppe v. Ranzini, 158 N.J. Super. 158, 165-66, 385 A.2d 913 (App.Div. 1978).
Finally, defendant contends that plaintiff cannot prove that she will suffer any damages from the Heim judgment because she herself is judgment-proof. Assuming she is, we reject the argument. Although plaintiff's damages may be cut back by the fact that her lost opportunities of recovering contribution may be worthless if they are directed against people who are judgment-proof, it does not follow that plaintiff suffered no damages because she herself is judgment-proof.
As we previously noted, in keeping with the general objective in measuring breach-of-contract damages, plaintiff is to be put in as good a position as she would have been had defendant furnished her separate counsel. The portion of any unsatisfied judgment against plaintiff that exceeds what it would have been without that breach is a debt not bargained for when the policy was purchased. Unless discharged in bankruptcy, the judgment will be enforceable for at least twenty years. N.J.S.A. 2A:14-5. Also unbargained for would be the costs of going bankrupt and, more important, the impediments to credit access that result from having gone bankrupt. Plaintiff is not obliged to become a bankrupt to mitigate damages.
The other issues raised have been rendered moot by our opinion or are clearly without merit and require no further discussion. R. 2:11-3(e)(1)(E).
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] Claims arising on or after December 18, 1987, are governed by the current version of N.J.S.A. 2A:15-5.3, L. 1987, c. 325, § 2, which limits the joint and several liability of tort codefendants whose percentage share of fault is less than 60%. Had the present statute applied, plaintiff's liability for noneconomic damages under the Heim judgment would have been limited to 50%, the percentage share of fault attributed to her by the jury.