**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0819-17T1

KARL HALLIGAN,

     Plaintiff-Respondent,

v.

JOHN O'CONNOR,

     Defendant-Appellant,

and

HARRY HODKINSON and
H&H REAL ESTATE
INVESTMENTS, LLC,

     Defendants-Respondents.

_____

Argued August 29, 2018 – Decided October 5, 2018

Before Judges Alvarez and Gooden Brown.

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-2559-16.

Andrew R. Turner argued the cause for appellant (Turner Law Firm, LLC, attorneys; Andrew R. Turner, of counsel and on the brief).

Steven Menaker argued the cause for respondent Karl Halligan (Chasan Lamparello Mallon & Cappuzzo, PC, attorneys; Steven Menaker, of counsel and on the brief).

Gwyneth K. Murray-Nolan argued the cause for respondent H&H Real Estate Investments, LLC (Weiner Law Group, LLP, attorneys; Gwyneth K. Murray-Nolan, of counsel and on the brief).

Harry Hodkinson, respondent, argued the cause pro se.

PER CURIAM

Under Rule 2:2-4, leave to appeal was granted to John O'Connor of an interlocutory order finding counsel for O'Connor and the business entities named as defendants had a non-waivable conflict which required them to withdraw from the litigation. Leave to appeal from interlocutory orders should be granted only in the "interest of justice." R. 2:2-4. We conclude that in this case, the interest of justice is served by Judge Jeffrey R. Jablonski's decision and thus affirm for the reasons that follow.

Plaintiff Karl Halligan and defendants O'Connor and Harry Hodkinson owned and operated two businesses: Park Avenue Bar & Grill, LLC (Park

2

A-0819-17T1

Avenue), and defendant H&H Real Estate Investments, LLC (H&H).[1] Halligan was the managing member of both companies.

On April 9, 2012, Halligan filed a complaint seeking equitable and compensatory relief for payment of his salary against the individuals. On May 30, 2012, O'Connor and Hodkinson, represented by Andrew R. Turner, Esquire, filed an answer and counterclaim seeking to dissociate Halligan.

After a multi-day trial, the court on March 18, 2014, issued a modified judgment disassociating Halligan. O'Connor and Hodkinson succeeded to the management of both companies. In November 2014, O'Connor and Hodkinson moved to vacate part of the March 18 order that required H&H and Park Avenue to make payments to Halligan because neither company was party to the lawsuit. On March 20, 2015, the trial court granted O'Connor and Hodkinson's motion to vacate, permitted Halligan to amend his complaint to add the two companies as defendants, and on April 6, 2015, issued a conforming order.

---

[1] Park Avenue is a tavern and bar in Union City, while H&H is a real estate company that owned the building from which Park Avenue operated.

A-0819-17T1

On August 25, 2015, Halligan filed an amended complaint against H&H.[2] H&H retained Gwyneth K. Murray-Nolan, Esquire, while Turner continued to represent O'Connor and Hodkinson. The property owned by H&H was sold for $1.1 million. The net sale proceeds of $845,151.56 were deposited into Murray-Nolan's trust account, where they remain.

In July 2017, Murray-Nolan moved for the payment of her counsel fees and submitted a certification declaring that O'Connor and Hodkinson retained her to represent H&H, and that she had their approval. Hodkinson's accompanying certification, prepared by Murray-Nolan, stated that he executed her retainer agreement, was satisfied with her firm's representation, and requested her bill be paid. However, Hodkinson did not sign the certification— it was signed by his former wife pursuant to a limited Power of Attorney granted to her in the parties' divorce proceeding. As part of an amended dual final judgment of divorce, the family court ordered that:

> the net sale proceeds from the sale of the commercial building totaling $842,869.91 shall remain in escrow and subject to the pending litigation. Plaintiff shall have a limited Power of Attorney over the Defendant enabling her to sign any and all necessary documents in the event the Defendant fails to cooperate with the

---

[2] Park Avenue filed for Chapter 11 reorganization. On December 9, 2014, the proceeding was converted into a Chapter 7 liquidation and its assets were sold in May 2015.

litigation including accepting settlement offers recommended by counsel in that matter.

On July 26, 2017, Hodkinson sent the judge an e-mail certifying that:

> O'Connor and I have not been in agreement for some time and we have not spoken or communicated in close to a year . . . . Effectively the members (O'Connor and I) have not been working together and we are in fact in direct conflict with each other and our own interests.
>
>         . . . .
>
> I understand legal papers have been recently filed with the court last week and I want to make clear to the court that I never saw or approved my certification submitted by . . . Murray Nolan in my name. In fact, I have stated in several e-mails and conversations to Murray Nolan that she does not represent me or the company dating back well over a year . . . .
>
> I never signed any retainer agreement with Murray Nolan and as managing member of the LLC she has excluded me from many of the proceedings. The retainer agreement was falsified by my ex wife and I have pointed this out to Murray Nolan on a number of occasions.
>
>         . . . .
>
> I do not approve of ANY payment of fees to Murray Nolan or any costs to . . . O'Connor.

On July 31, 2017, Hodkinson forwarded this e-mail to the court:

> I informed Murray Nolan in March 2016 and continually up to the sale of the property in July 2016 that she did not represent me. This was made crystal

A-0819-17T1

clear to her and is reflected in her invoice notes and my emails . . . . With respect to Andrew Turner although he has acted for the most part honestly and honorably, he was aware like Murray Nolan of the serious conflict that existed. Murray Nolan notes in her billing invoice (as early as August of last year and before we appeared in front of [Your Honor]) several conversations between Andrew Turner and herself about this conflict of interest especially after O'Connor asked for me to be removed from H&H[.] So I respectfully submit that Andrew Turner and Murray Nolan cannot stay in the case with two clients so diametrically opposed. . . .

O'Connor also wanted me removed from the company and discussed this with both counsel behind my back and the notes of these conversations are detailed in Murray Nolan invoicing.

On August 2, 2017, Halligan's counsel moved to disqualify both Murray-Nolan and Turner. On the same day, Hodkinson sent letters to both attorneys discharging them.

To Turner, Hodkinson wrote:

The fact of the matter . . . is I note from Murray Nolan's invoices that you were aware of conflict as early as [A]ugust of last year, when O'Connor surreptitiously tried to have me removed as managing partner, she notes you had many hours of calls discussing how you could remain as counsel and that you came to an arrangement. This does not strike me as ethical or in mine or the company's best interests. You never made me aware of these calls or [O'Connor's] subterfuge and pretty much kept me in the dark for the last year[.]

Consider yourself terminated effective immediately.

6

At the August 18, 2017 disqualification hearing, Hodkinson testified. After hearing argument, the court concluded that both Turner and Murray-Nolan were disqualified because of conflicts of interest. In explaining his reasoning, the judge said:

> [ ] Hodkinson has indicated both in his e-mails, as well as his sworn testimony today, that both [ ]. -- he has discharged both [ ] Turner as his private counsel, and also [ ] Murray-Nolan as counsel for H&H.
>
> . . . .
>
> Further, the plaintiff argues that there is a conflict between [ ] Hodkinson and corporate and personal counsel, and that the discharge of both attorneys by [ ] Hodkinson requires the disqualification of both attorneys from representation.
>
> . . . .
>
> RPC, Rule of Professional Conduct, 1.7, Subsection A, Subsection 1, prohibits the representation of clients with adverse interests.
>
> That precept prohibits, with the mandatory "shall," the representation of a client that . . . involves a concurrent conflict of interest.
>
> A concurrent conflict of interest exists under the RPCs if the representation of one client will be directly adverse to another.
>
> . . . [B]ased upon the submissions provided . . . from [ ] Hodkinson, there is a clear conflict between the

interest that must be expressed by [ ] Hodkinson and advanced by [ ] O'Connor . . . .

[R]ecent submissions by [ ] Hodkinson . . . reveal[ ] both the existence of an actual conflict, and the realistic possibility of additional conflict as the matter proceeds.

The conflict that exists certainly outweighs the mutuality of interest that is possessed.

. . . .

[ ] Turner, unfortunately, cannot present a united front based on the allegations that have been made against him personally and against [ ] O'Connor.

. . . [A]n actual and [unwaivable] conflict of interest exists between these parties that would prohibit [ ] Turner from advancing the position of one client, while also not prejudicing the other.

Without a waiver of this most basic and obvious conflict, . . . Turner's representation, as to either party, must be precluded as well.

[ ] Turner has been discharged by his client, therefore under RPC 1.16(a)3, again employing the mandatory language, ["a lawyer s]hall withdraw from representation of a client if the lawyer is discharged [."]

. . . .

. . . [C]ounsel is required to completely withdraw from the representation of each client.

. . . .

8

The application of the plaintiff is granted, and both personal counsel and counsel for the LLC or H&H is discharged.

. . . .

If you wish to represent yourself, [ ] Hodkinson, personally, you may [ ] do so.

[ ] O'Connor, as well as you. Your attorney has been discharged as a result of this opinion.

The judge also explained to the parties that corporations and LLCs must be represented by counsel in litigation. We deny Turner's appeal on behalf of O'Connor as to both his and Murray-Nolan's disqualification, relying on Judge Jablonski's analysis with additional brief comments.

O'Connor contends that neither counsel should have been discharged, and that O'Connor and Hodkinson were improperly compelled to continue in a self-represented capacity. O'Connor further argues that the trial court improperly deprived him of the right to counsel of his choice and directed him and Hodkinson to proceed as self-represented litigants. The latter point is not supported by the record. We will not address it further. R. 2:11-3(e)(1)(E).

We review a trial judge's factfinding deferentially, so long as it is supported by the competent, relevant, and reasonably credible evidence in the record. Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974). We

review questions of law de novo. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). In this case, we fault neither the judge's factfinding nor his conclusions of law.

An adversary may seek to disqualify an opposing attorney because of a conflict of interest. The adversary bears the burden of demonstrating that the disqualification is justified. City of Atlantic City v. Trupos, 201 N.J. 447, 462-63 (2010). In this case, Halligan has met that burden.

RPC 1.7(a)(1) provides that an attorney "shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if . . . the representation of one client will be directly adverse to another client."

In a series of e-mails, Hodkinson made it abundantly clear that his interests were adverse to O'Connor's. He disagreed with O'Connor's decisions regarding H&H, objected to the sale of the H&H property, opposed Murray-Nolan's fee application, opposed O'Connor's application for expenses, and knew that O'Connor discussed removing him from H&H with both counsel. See RPC 1.7(a)(1).

Concurrent representation of multiple parties alleged to be on the same side here is not possible. In Hill v. N.J. Dep't of Corrections, 342 N.J. Super.

A-0819-17T1

273 (App. Div. 2001), we addressed the question of whether one attorney could represent an employer and several employees who arguably shared interests in a lawsuit because they were defending claims made against them. We said: "joint representation of multiple parties whose interests are potentially diverse is permissible only if 'there is a substantial identity of interests between them in terms of defending the claims that have been brought against all defendants. The elements of mutuality must preponderate over the elements of incompatibility.'" Id. at 309 (citing Petition for Review of Opinion 552, 102 N.J. 194, 204 (1986)). There is no identity of interests between Hodkinson and O'Connor.

In Wolpaw v. General Accident Insurance Co., 272 N.J. Super. 41 (App. Div. 1994), an insurance company assigned one attorney to represent the homeowner, her sister, and the sister's eleven-year-old son, who had accidently injured a playmate with an air rifle. 272 N.J. Super. at 45. Holding the defendants were entitled to separate counsel, we found that "[t]he three insureds had the common interests of minimizing the amount of [an injured neighbor's] judgment and maximizing the percentage of fault attributable to the other defendants. However, their interests in maximizing the percentage of the other insureds' fault and minimizing their own were clearly in conflict." Ibid.

A-0819-17T1

Although Hodkinson and O'Connor share an interest in minimizing Halligan's portion of the escrowed funds, between them their interests are wholly adverse because each seeks a greater percentage of the proceeds. Hodkinson alleged O'Connor was trying to remove him from H&H. They were not on friendly terms, and had not communicated for more than a year. The trial court properly found "there is a clear conflict between the interest that must be expressed by [ ] Hodkinson and advanced by [ ] O'Connor . . . . The [actual] conflict that exists certainly outweighs the mutuality of interest that is possessed."

When a conflict develops, the attorney must withdraw from the representation of both parties. See McDaniel v. Man Wai Lee, 419 N.J. Super. 482, 497 (App. Div. 2011) (finding that "if a future possibility arises, albeit remote, when [the jointly represented parties'] interests become adverse, counsel is required to completely withdraw from the representation of each client."); DeBolt v. Parker, 234 N.J. Super. 471, 484 (Law Div. 1988) (finding that "[w]hen an attorney represents potentially and foreseeably adverse interests, such as the driver and passenger here, and the adversity becomes actual, counsel must withdraw from any representation of both parties") (emphasis in original).

A-0819-17T1

Independent of his conflict with O'Connor, Hodkinson's conflict with his attorneys alone required disqualification. RPC 1.7(a)(2) states that a concurrent conflict of interest exists if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer."

Hodkinson communicated to Murray-Nolan that she did not represent him or his interests, and complained that she sent documents to the court in his name without his review or approval. The record suggests that Murray-Nolan and Turner had at least the appearance of favoring O'Connor above Hodkinson, placing one client's interest above the other. See RPC 1.7(a)(2). "A lawyer should not be permitted to put himself in a position where, even unconsciously he will be tempted to 'soft pedal' his zeal in furthering the interests of one client in order to avoid an obvious clash with those of another." Estate Theatres, Inc. v. Columbia Pictures Indus., Inc., 345 F. Supp. 93, 99 (S.D.N.Y. 1972). Where Hodkinson had no working relationship with either attorney, and they in turn continued to pursue matters at O'Connor's instruction, counsel was in a position that requires removal.

A-0819-17T1

Furthermore, RPC 1.16(a)(3) requires that a lawyer "shall withdraw from the representation of a client if the lawyer is discharged."  "The client's right to hire and fire an attorney is integral to the client-lawyer relationship."  Cohen v. Radio-Elec. Officers Union, 146 N.J. 140, 157 (1996) (citing In re Estate of Poli, 134 N.J. Super. 222, 226-27 (App. Div. 1975)).  "A client may always discharge a lawyer, regardless of cause and regardless of any agreement between them.  A client is not forced to entrust matters to an unwanted lawyer."  Ibid. (citing the Restatement of the Law Governing Lawyers § 44, cmt. b (Proposed Final Draft No. 1 1996)).

On August 1, 2017, Hodkinson sent Murray-Nolan a letter stating she "no longer represent[s] the company H&H . . . effective immediately."  Similarly, on August 2, 2017, Hodkinson sent Turner a letter stating "[c]onsider yourself terminated effective immediately."  Upon receipt of Hodkinson's letters, both attorneys had to withdraw.  See Cohen, 146 N.J. at 157.  The record supported the judge's findings of facts, and he correctly applied the law to the facts before him.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14                                                                 A-0819-17T1