**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0711-24

ALLSTATE INSURANCE COMPANY,
ALLSTATE INDEMNITY COMPANY,
ALLSTATE NEW JERSEY INSURANCE
COMPANY, ALLSTATE PROPERTY &
CASUALTY INSURANCE COMPANY,
ALLSTATE NEW JERSEY PROPERTY
AND CASUALTY INSURANCE and
ALLSTATE FIRE & CASUALTY
INSURANCE COMPANY,

     Plaintiffs-Appellants,

v.

ROBERT MATTURRO, D.C., TRI-
COUNTY CHIROPRACTIC &
REHABILITATION, P.C.,
CHIROPRACTIC HEALTH CENTER,
P.C., UNION CITY SPINE AND PAIN
ASSOCIATES, LLC, MARC
MATTURRO, D.C., ANTHONY
NARCISO, D.C., NICHOLAS ROSANIA,
D.C., MICHAEL RUSSONELLA, D.O.,
THE GARDEN STATE ORTHOPAEDIC
& SPORTS MEDICINE INSTITUTE, LLC,
VARINDER DHILLON, M.D.,
ADVANCED SPINE & PAIN
MANAGEMENT, LLC, FRANCES
RISPOLI, M.D., THE CENTER FOR

ORTHOPEDIC SURGERY, LLC,
ALFRED MAURO, M.D., CORE PAIN
MANAGEMENT, LLC, RYTIS VALSKYS,
M.D., ESSENTIAL SPINE & PAIN, LLC,
MANIK SINGH, M.D., SPORTS
MANAGEMENT INSTITUTE, LLC, a/k/a
SPORTS MEDICINE 360, LLC,
EVANGELOS MEGARIOTIS, M.D.,
BLOOMFIELD MEDICAL SERVICES,
LLC, DOV RAND, M.D., BLOOMFIELD
UAI, LLC, PETER DIPAOLO, M.D.,
NORTH JERSEY ORTHOPEDIC GROUP,
LLC, JOHN HANDAGO, M.D.,
ORTHOPEDIC SPECIALIST GROUP,
LLC, LOUIS CITARELLI, M.D.,
PRIMARY MEDICAL SERVICES, LLC,
MARCO TARTAGLIA, M.D., WILLIAM
ADESSO, BERGENLINE COUNSELING
CENTER, SURGICORE, LLC, JOSEPH
LOZITO, M.D., GEJO, LLC, PRACTICE
STAFFING, LLC, P.I.P. MANAGEMENT
AND CONSULTING SERVICES CORP.,
THE MATTURRO FAMILY LIMITED
PARTNERSHIP, MATTURRO FAMILY
REAL ESTATE INVESTMENT TRUST,
LLC, LIBERTY FUNDING, LLC, SANDRA
INFUSINO, PIP HEALTHCARE SOLUTIONS,
INC., TAUPO LEASING AND SERVICES,
INC., SYLVANDER CORP., a/k/a TOWN
CHECK CASHING and NTA MANAGEMENT,
LLC,

       Defendants-Respondents.
_____

NEW JERSEY DEPARTMENT OF
BANKING AND INSURANCE,

Intervenor.

_____

Submitted May 13, 2025 – Decided June 16, 2025

Before Judges Gilson and Firko.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-2707-20.

Kennedy Vuernick, LLC, attorneys for appellants (Richard E. Vuernick, of counsel and on the brief).

Respondents and Intervenor have not filed briefs.

PER CURIAM

On leave granted, plaintiffs appeal from a September 5, 2024 order that denied their motion to disqualify the law firm of Jeffrey Randolph, LLC (the Randolph Firm) from representing approximately thirty-five[1] of the forty-two defendants in this insurance fraud action. Plaintiffs contend that there are

_____

[1] We note that plaintiffs contend the Randolph Firm represents thirty-two of the thirty-nine defendants in this matter. That appears to be incorrect. The answer to the complaint filed by the Randolph Firm lists thirty-four defendants that it represents. The Randolph Firm's settlement offer to plaintiffs lists thirty-four defendants. The record indicates the Randolph Firm also represents Nicholas Rosania. Moreover, there appears to be forty-two defendants named in plaintiffs' amended complaint. Three defendants, Dr. Frances Rispoli, Dr. Rytis Valsyks, and Surgicore, LLC, achieved a settlement with plaintiffs but are mentioned in plaintiffs' merits brief. For purposes of our opinion, we state the Randolph Firm represents approximately thirty-five of the forty-two defendants. The exact number is not germane to our decision.

existing conflicts of interest among defendants, as well as significant risks of conflicts developing among them.

For the reasons explained in this opinion, we hold that there are significant risks that conflicts will arise under RPC 1.7(a)(2) among the approximately thirty-five defendants represented by the Randolph Firm. The Randolph Firm did not submit any signed, written waiver consent forms, signed retainer agreements, or indemnification agreements from all thirty-five of its clients for an in-camera review by the trial court. Thus, we vacate the September 5, 2024 order that denied the motion to disqualify the Randolph Firm and remand for further proceedings consistent with this opinion. We also vacate our May 22, 2025 order staying and adjourning the June 30, 2025 trial date.

I.

The facts concerning the disqualification motion in this matter are similar to the facts set forth in this court's unpublished opinion entered on January 9, 2025, in which we addressed plaintiffs' motion for leave to appeal the orders denying its motion to disqualify the Randolph Firm and Mandelbaum Barrett, PC in another matter. See Allstate N.J. Ins. Co. v. Carteret Comprehensive Med.

<u>Care, P.C.</u>, No. A-1575-23 (App. Div. Jan. 9, 2025).[2] We incorporate, by reference, the facts stated in our prior opinion to the extent they are consistent with the matter under review.

Plaintiffs are six related insurance companies: Allstate Insurance Company; Allstate Indemnity Company; Allstate New Jersey Insurance Company; Allstate Property and Casualty Insurance Company; Allstate New Jersey Property and Casualty Insurance Company; and Allstate Fire and Casualty Insurance Company (plaintiffs or Allstate). Allstate provides no-fault automobile insurance policies in New Jersey, under which insureds can recover personal injury protection (PIP) benefits if they are injured in an automobile accident. When insureds receive medical treatment, they may, and typically do, assign their PIP benefits to their medical providers. The medical providers can then seek payment from insurers, like Allstate. <u>See</u> N.J.S.A. 39:6A-4 (allowing PIP benefits to be assigned "to a provider of service benefits").

In September 2022, plaintiffs filed a thirty-three-count amended complaint—the operative pleading here—against forty-two defendants, including several medical practices, the owners of those practices, current and

---

[2] We also separately issued a published opinion reversing the orders compelling arbitration and dismissing Allstate's complaint. <u>See</u> <u>Allstate N.J. Ins. Co. v. Carteret Comprehensive Med. Care, P.C.</u>, 480 N.J. Super. 566 (App. Div. 2025)

former administrators working at or with those medical practices, various corporate entities, and their owners. Plaintiffs' amended complaint asserts defendants' actions violated the Insurance Fraud Prevention Act (the Fraud Act), N.J.S.A. 17:33A-1 to -30, the New Jersey Anti-Racketeering Act (RICO), N.J.S.A. 2C:41-1 to -6.2, the Anti Self-Referral Law, N.J.S.A. 45:9-22.4 to -22.9, the Automobile Insurance Cost Reduction Act, N.J.S.A. 39:6A-1.1 to -35, the Patients Records Rule, N.J.A.C. 13:35-6.5(b), and N.J.A.C. 13:35-7.6. Plaintiffs also assert various common law breach of contract claims and unjust enrichment.

Plaintiffs allege that defendants engaged in an insurance fraud scheme, in which they created unlawfully structured medical practices, engaged in unlawful self-referrals, received kickbacks, and conspired to "maximize profit" without regard to patient care, the PIP statute, or state regulations governing delivery of health care. According to plaintiffs, defendants allegedly rendered medically unnecessary treatments and electrodiagnostic tests and sought payment from plaintiffs for those services and tests. Plaintiffs also allege defendants billed for services not rendered, in violation of the Patient Records Rule, N.J.A.C. 13:35-6.5(b).

A-0711-24

In particular, plaintiffs allege defendants Robert Matturro, D.C. (R. Matturro) and Nicholas Rosania, D.C. initiated a self-referral and insurance fraud scheme. Rosania created multiple medical practices with the assistance of plenary licensed defendant physicians who were the "purported" owners of the medical practices, treating patients who were injured in vehicular accidents. However, plaintiffs allege R. Matturro and Rosania actually "owned and controlled" the medical practices. In turn, plaintiffs allege these medical practices received referrals from R. Matturro's two chiropractic clinics.

Plaintiffs aver the medical practitioners treated patients at R. Matturro's chiropractic clinics, leased space from him, and paid non-negotiated "rent," which was in excess of fair market value. Plaintiffs allege these defendant physicians treated R. Matturro's patients according to a pre-determined treatment protocol, and the so-called "rent" was in reality a "thinly disguised referral fee."

Plaintiffs also allege several defendants created entities to extract unlawful referral fees for certain testing often based upon the referring chiropractors' fabricated patient complaints. Plaintiffs aver several of defendants' patients received medically unnecessary joint injections, arthroscopic surgeries, and pain medications for which defendants received

7

"kickbacks" in return. According to plaintiffs, defendants' "pre-determined treatment protocol" resulted in "significant, medically unnecessary treatment and testing" to plaintiffs' insureds. Plaintiffs allege defendants have engaged in a "pattern" of violating the Fraud Act, and as a result, they are "jointly and severally liable."

As remedies, plaintiffs seek damages for PIP medical benefits paid to defendants to which they were not entitled, compensatory damages incurred for investigating defendants' fraudulent bills for treatment and testing performed as a result of unlawful referrals, arbitration-related costs, a declaratory judgment that defendants violated laws pertaining to unlawful corporate ownership, imposing a constructive trust on certain defendants' assets, treble damages, injunctive relief, and attorneys' fees.

As stated, the Randolph Firm assumed representation of approximately thirty-five of the forty-two named defendants: Robert Matturro, D.C., Tri-County Chiropractic & Rehabilitation, P.C., Chiropractic Health Center, P.C., Marc Matturro, D.C., Anthony Narciso, D.C., Union City Spine and Pain Associates, LLC, The Garden State Orthopaedic & Sports Medicine Institute, LLC, The Center for Orthopedic Surgery, LLC, Core Pain Management, LLC, Essential Spine & Pain, LLC, Manik Singh, M.D., Sports Management Institute,

8

LLC, Bloomfield Medical Services, LLC, Dov Rand, M.D., Bloomfield UAI, LLC, Peter DiPaolo, M.D., North Jersey Orthopedic Group, LLC, John Handago, M.D., Orthopedic Specialist Group, LLC, Marco Tartaglia, M.D., Joseph Lozito, M.D., Gejo, LLC, Practice Staffing, LLC, P.I.P. Management & Consulting Services Corp., Matturro Family Limited Partnership, Matturro Family Real Estate Investment Trust, LLC, William Addesso, Bergenline Counseling Center, LLC, Liberty Funding, LLC, Sandra Infusino, PIP Healthcare Solutions, Inc., Taupo Leasing and Services, Inc., Sylvander Corp. a/k/a Town Check Cashing, and NTA Management, LLC. The Randolph Firm also represents Nicholas Rosania.[3]

In short, the Randolph Firm represents several physicians who co-owned some of the Rosania entities with Rosania or Matturro, several of the Rosania entities and corporations and their administrators, and Matturro and Rosania individually. Plaintiffs also allege the administrative functions Rosania provided for the medical practices enabled him to funnel money for his and Matturro's benefit under the guise of rent, management fees, or payroll. It

---

[3] The record indicates that Rosania is represented by another attorney, Robert Carter Pierce, Esq., in a separate matter. On February 11, 2022, Rosania was convicted of conspiracy, N.J.S.A. 2C:5-2, official misconduct, N.J.S.A. 2C:30-2, and bribery in official matters, N.J.S.A. 2C:27-2, ostensibly related to his participation with R. Matturro to solicit patients to their chiropractic center.

appears the Randolph Firm represents all but two of Rosania's entities. Thereafter, plaintiffs settled with several defendants, obtained certifications from the settling defendants, conducted discovery, and deposed other defendants who had not settled and were also represented by the Randolph Firm.

Plaintiffs moved to disqualify the Randolph Firm from representing the thirty-five defendants. First, Allstate contended that there were significant risks that the Randolph Firm's representation of multiple co-defendants would materially limit the firm's responsibility to the other co-defendants in violation of RPC 1.7(a)(2). In support of their argument, plaintiffs noted that at defendant DiPaolo's deposition, he testified that "he did not retain nor pay [the Randolph Firm] to represent him in the litigation." In addition, plaintiffs maintained that the Randolph Firm had filed answers and discovery responses in this matter "without speaking to even some of the [d]efendant physicians" that the firm "purported to represent." Plaintiffs argued the Randolph Firm was not sharing litigation strategy with all defendants it represented.

Second, plaintiffs argued that the Randolph Firm advised Rosania in creating the Rosania entities and helped "establish[] the scheme where the [Rosania entities] [would] pay monies to defendant Matturro without the other [co-defendants'] knowledge." Plaintiffs contended the Randolph Firm is unable

10

to fairly represent the remaining defendants who previously worked at or who currently work for the Rosania entities, while simultaneously representing both Rosania and R. Matturro.

Specifically, plaintiffs asserted that there were inherent conflicts of interest because certain of their claims, including plaintiffs' claims for violations of the Fraud Act, would be subject to the Comparative Negligence Act (CN Act), N.J.S.A. 2A:15-5.1 to -5.8. Plaintiffs pointed out that if they prevailed at trial, the liability verdict and damages would have to be apportioned amongst defendants, which has already created "an unavoidable conflict" for the Randolph Firm.

Plaintiffs contended the circumstances presented reveal the defendant physicians represented by the Randolph Firm have potential cross-claims against R. Matturro, who is also represented by the Randolph Firm. In support of this claim, plaintiffs contend discovery revealed that defendants who are the majority owners of the medical practices were unaware of the amount of "rent" their medical practices paid to R. Matturro.

Plaintiffs also argued that all of the settling defendants certified that their interests "were adverse to other co-defendants, including [R. Matturro]." In particular, several of the certifications, as well as deposition testimony, asserted

that Matturro and Rosania had misled certain defendants with regard to the amount of monthly "rent" they had to pay. Other certifications and deposition testimony disclosed several defendants were unaware that the Randolph Firm had attempted to settle the case with plaintiffs in 2023. Plaintiffs aver defendants are motivated to blame one another to avoid liability, and thus it is "impossible" for the Randolph Firm to provide advice to each defendant regarding potential settlement.

Defendants countered that there were no actual, concurrent conflicts of interest regarding their decision to be jointly represented by the Randolph Firm. Defendants claimed the certifications provided by the settling defendants were "self-serving," and that the settling defendants were the only defendants who had objected to the Randolph Firm's joint representation. Defendants argued disqualification of counsel is a "harsh discretionary remedy," and there is no present "non-waivable conflict of interest." Defendants did not submit any signed, written waiver consent forms, or any signed retainer agreements or indemnification agreements, in opposition to plaintiffs' motion.

Defendants also maintained that a member of the Randolph Firm, Anna Skowronska, Esq., had certified she could provide "competent and diligent

representation" to each of the defendants that the Randolph Firm represented, and that "she did not know" of any cross-claims among defendants.

In reply, plaintiffs argued that there was a clear issue of liability between defendants represented by the Randolph Firm. Further, plaintiffs asserted that the settling defendants' certifications evidenced that several defendants did not have knowledge of or control over the alleged fraud occurring at the Rosania entities, and therefore, the certifications are not self-serving. Plaintiffs pointed out that certain defendants certified they were unaware of the claims pending against them, which further evidenced the Randolph Firm was not authorized to represent them. In addition, plaintiffs noted that the Randolph Firm did not provide any factual or legal basis to support its conclusion that no conflict of interest exists.

On September 5, 2024, the trial court entered an order denying plaintiffs' motion to disqualify the Randolph Firm without prejudice. In its rider to the order, the trial court recognized that disqualification of counsel is an "especially 'harsh remedy'" and that the "facts currently presented do not reveal a conflict of interest." The trial court noted defendants are "not currently asserting any cross-claims against one another," and none of the subject defendants have

A-0711-24

sought representation by another attorney "based upon a purported conflict of interest."

Thus, the trial court determined that plaintiffs did not meet their burden of proving there was a conflict of interest under RPC 1.7(a)(2). The trial court concluded the joint representation of the thirty-five defendants by the Randolph Firm was permissible "at least at this time." It is unclear from the record whether the June 30, 2025 trial date had been assigned at the time the motion was denied.

We initially denied plaintiffs' motion for leave to appeal the order denying their motion to disqualify the Randolph Firm. However, upon receiving and reviewing plaintiff's motion for reconsideration, we granted plaintiffs' motion for leave to appeal.

Before us, plaintiffs primarily make two arguments. First, plaintiffs contend the trial court failed to recognize the Randolph Firm's inherent conflict of interest in concurrently representing multiple defendants under RPC 1.7, particularly in a situation where there is a question of liability between the parties, and where they might file cross-claims and third-party claims against each other. In that regard, plaintiffs contend the Randolph Firm never generated an engagement letter either at the Rosania corporations' inception or following the Randolph Firm's retention to represent defendants in this litigation,

14

explaining its role, and identifying which defendants the Randolph Firm is authorized to take direction from, in violation of RPC 1.7.

Second, plaintiffs argue the trial court failed to recognize defendants' inherent conflicts of interest in a case subject to the CN Act. Plaintiffs assert each defendant is motivated to blame the other co-defendants to limit their individual liability. Plaintiffs contend there is an unavoidable conflict for the Randolph Firm because if there is a settlement or verdict against any, some, or all defendants, liability and damages must be apportioned amongst them pursuant to the CN Act. Plaintiffs aver defendants' settlement positions are "diverse and adverse," with certain defendants having more culpability, triggering the need for independent counsel.

## II.

"[A] determination of whether counsel should be disqualified is, as an issue of law, subject to de novo plenary appellate review." City of Atlantic City v. Trupos, 201 N.J. 447, 463 (2010); see also Twenty-First Century Rail Corp. v. N.J. Transit Corp., 210 N.J. 264, 274 (2012). The burden is on the movant to prove a basis for disqualification. State v. Hudson, 443 N.J. Super. 276, 282 (App. Div. 2015). When deciding a motion to disqualify counsel, courts must "balance competing interests, weighing the need to maintain the highest

15

standards of the profession against a client's right freely to choose his [or her] counsel." Twenty-First Century Rail Corp., 210 N.J. at 273-74 (quoting Dewey v. R.J. Reynolds Tobacco Co., 109 N.J. 201, 218 (1988)) (internal quotation marks omitted). In striking that balance, courts must consider that "a person's right to retain counsel of his or her choice is limited in that there is no right to demand to be represented by an attorney disqualified because of an ethical requirement." Id. at 274 (quoting Dewey, 109 N.J. at 218) (internal quotation marks omitted).

Motions for disqualification should be "viewed skeptically in light of their potential abuse to secure tactical advantage." Escobar v. Mazie, 460 N.J. Super. 520, 526 (App. Div. 2019). Accordingly, courts conduct a fact-specific analysis in determining if a conflict exists. Dewey, 109 N.J. at 205. Nevertheless, if there is "any doubt as to the propriety of an attorney's representation of a client, such doubt must be resolved in favor of disqualification." Est. of Kennedy v. Rosenblatt, 447 N.J. Super. 444, 451 (App. Div. 2016) (quoting Herbert v. Haytaian, 292 N.J. Super. 426, 438-39 (App. Div. 1996)) (internal quotation marks omitted).

A. The RPCs.

Under RPC 1.7, a lawyer or a law firm is prohibited from representing a

client, or more than one client, if there is a concurrent conflict of interest. In that

regard, RPC 1.7(a) provides:

> (a) Except as provided in paragraph (b), a lawyer shall
> not represent a client if the representation involves a
> concurrent conflict of interest. A concurrent conflict of
> interest exists if:
>
>> (1) the representation of one client will be
>> directly adverse to another client; or
>>
>> (2) there is a significant risk that the
>> representation of one or more clients will be
>> materially limited by the lawyer's responsibilities
>> to another client . . . .
>
> [RPC 1.7(a).]

RPC 1.7(b) then explains that under certain circumstances, clients may

waive conflicts of interest by giving "informed consent." That portion of the rule

reads as follows:

> (b) Notwithstanding the existence of a concurrent
> conflict of interest under paragraph (a), a lawyer may
> represent a client if:
>
>> (1) each affected client gives informed consent,
>> confirmed in writing, after full disclosure and
>> consultation. . . . When the lawyer represents
>> multiple clients in a single matter, the
>> consultation shall include an explanation of the

17

common representation and the advantages and risks involved;

(2) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(3) the representation is not prohibited by law; and

(4) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal.

[RPC 1.7(b).]

RPC 1.7 embodies "the fundamental understanding that an attorney will give 'complete and undivided loyalty to the client' . . . [and] 'should be able to advise the client in such a way as to protect the client's interests.'" State ex rel. S.G., 175 N.J. 132, 139 (2003) (quoting In re Dolan, 76 N.J. 1, 9 (1978)). When a conflict develops, an attorney must withdraw from the representation of all parties. See McDaniel v. Man Wai Lee, 419 N.J. Super. 482, 497 (App. Div. 2011) (explaining that "when [jointly represented parties'] interests become adverse, counsel is required to completely withdraw from the representation of each client"); see also DeBolt v. Parker, 234 N.J. Super. 471, 484 (Law Div. 1998) (holding that "[w]hen an attorney represents potentially and foreseeably adverse interests, . . . and the adversity becomes actual, counsel must withdraw

from any representation of both parties"). Accordingly, a conflict of interest may preclude a lawyer from representing co-defendants. See In re Petition for Rev. of Op. 522 of the Advisory Comm. on Pro. Ethics (Op. 522), 102 N.J. 194, 205 (1986); Kramer v. Ciba-Geigy Corp., 371 N.J. Super. 580, 602-05 (App. Div. 2004).

B. Risk of Conflicts

Consistent with the mandates of RPC 1.7, courts have explained that "joint representation of multiple parties whose interests are potentially diverse is permissible only if 'there is a substantial identity of interests between them in terms of defending the claims that have been brought against all defendants.'" Hill v. N.J. Dep't of Corr. Comm'r Fauver, 342 N.J. Super. 273, 309 (App. Div. 2001) (quoting Op. 552, 102 N.J. at 204). Accordingly, we have held that a conflict of interest exists when one firm sought to represent three defendants whose interests in attributing fault to each other were in conflict. Wolpaw v. Gen. Accident Ins. Co., 272 N.J. Super. 41, 45 (App. Div. 1994).

The New Jersey Supreme Court has held that courts should evaluate the alleged conflicts in a "highly fact specific" manner, In re State Grand Jury Investigation (Grand Jury), 200 N.J. 481, 491 (2009) (quoting State v. Harvey, 176 N.J. 522, 529 (2003)), and "engage[] in the required 'painstaking analysis

of the facts.'" Dewey, 109 N.J. at 205 (quoting Reardon v. Marlayne, Inc., 83 N.J. 460, 469 (1980)).

In Wolpaw, an insurance company assigned "a single firm" to represent a homeowner, the homeowner's sister, and the sister's eleven-year-old son, who had accidentally shot a neighbor playmate with an air rifle. 272 N.J. Super. at 43-44. There, we held that the three defendants were entitled to separate counsel because the "three insureds had the common interest of minimizing the amount of [the injured neighbor's] judgment and maximizing the percentage of fault attributable to the other defendants. However, their interests in maximizing the percentage of the other insurers' fault and minimizing their own were clearly in conflict." Id. at 45.

Similarly, in Comando v. Nugiel, one firm served as counsel to two corporate entities. 436 N.J. Super. 203, 206-08 (App. Div. 2014). Specifically, the firm represented both entities in negotiating a lease agreement, whereby one entity leased property to the other for a period of twenty years. Ibid. We held that the firm's representation of both entities violated RPC 1.7(a)(2). Id. at 216. In reaching that conclusion, we reasoned that the firm never provided an engagement letter explaining the nature of its representation of both entities. Id. at 215. We also pointed out that in negotiating beneficial terms under the lease

20

for one entity, the firm would have had to take a position adverse to the other entity.  Ibid.  Despite the clear adverse interests between the two entities, neither party signed a consent waiver.  Ibid.

Here, we conclude the trial court erroneously found that there was no significant risk that potential conflicts could arise among the approximately thirty-five defendants represented by the Randolph Firm.  The trial court stated that "[d]efendants are not currently asserting any cross-claims against one another, nor have any of the subject [d]efendants sought representation by another attorney based upon a purported conflict of interest."

On the contrary, we hold there are significant risks that conflicts will develop under RPC 1.7(a)(2) among defendants represented by the Randolph Firm.  Even more concerningly, there is evidence that significant conflicts of interest have already developed between and amongst the numerous defendants represented by the Randolph Firm.

The certifications and depositions provided by plaintiffs support that conclusion.  Here, the current record does not establish that all defendants voluntarily agreed to be jointly represented by the Randolph Firm.  We recognize defendants have a common interest in disputing and defending the allegations against them.  But as the case proceeds, and with a pending trial date,

21

defendants also may have an interest in seeking to minimize their own individual liability and maximize their co-defendants' liability.

Moreover, there are significant risks certain defendants may, as the facts develop further, assert that other defendants had a greater role in the alleged fraud schemes or compelled them to participate in the schemes. If those situations arise, the Randolph Firm could not ethically advise all defendants because of those conflicting interests. Fundamentally, at least some defendants maintain that Rosania or Matturro managed the Rosania entities, and they controlled the finances of the Rosania entities. Further, certain defendant physicians certified that Rosania or Matturro managed the finances for the Rosania entities.

In response to plaintiffs' interrogatories, the Randolph Firm served the expert report of Gary S. Stetz, a certified public accountant. In his report, Stetz made two findings, which are potentially detrimental to the positions advanced by the physicians represented by the Randolph Firm. First, Stetz noted his "investigation found that none of the [Rosania] entities . . . would require a [medical doctor] or [doctor of osteopathic medicine] to perform examinations and procedures [which] were controlled by [doctors of chiropractic.]" Second,

Stetz determined there were no medical doctors or osteopaths who were employed by Matturro or Rosania.

Moreover, Stetz concluded the Rosania entities were not controlled by either Rosania or Matturro—who are chiropractors—but rather by physicians who independently made decisions on behalf of the Rosania entities. Thus, if plaintiffs' claims proceed to trial, and a verdict is reached against defendants, Stetz's report could potentially lead to greater damages being apportioned to the physicians represented by the Randolph Firm.

Based on the record presented, we are convinced a hearing is required to determine whether the Randolph Firm is able to "give 'complete and undivided loyalty to [each of their] client[s],'" as mandated by RPC 1.7. S.G., 175 N.J. at 139 (2003) (quoting In re Dolan, 76 N.J. at 9).

### C. Whether the Risks of Conflicts Were Waived

As already discussed, RPC 1.7(b) allows a lawyer or law firm to represent clients who have concurrent conflicts of interest, so long as all the clients provide written informed consents and "the representation is not prohibited by law." RPC 1.7(b)(3). "Joint representation will not automatically be prohibited due to an apparent divergence of interests on the face of the complaint." Op. 552, 102 N.J. at 205. The critical determination is whether the jointly

represented defendants have common interests that outweigh their potential conflicts and whether the defendants will present consistent defenses to the claims brought against them. Ibid.

Thus, joint representation is permissible "if it does not appear clearly from the pleadings or from early discovery that the claims against [defendants] will result in different and inconsistent defenses, or will, if successful, probably lead to independent or several, rather than overlapping or joint, compensatory relief against each class of defendants." Ibid.

Here, defendants did not provide any certifications or written documentation, such as signed, written consent waiver forms, signed retainer agreements, or indemnification agreements. See RPC 1.7(b)(1). Saliently, the record shows that some of these defendants may not even be aware that the Randolph Firm is representing them. For example, DiPaolo testified he had no idea how the Randolph Firm came to represent him in the litigation, and he stated he never paid a retainer fee to the Randolph Firm. DiPaolo also was unaware of the Randolph Firm's attempt to settle the case two years ago. Consequently, we remand plaintiffs' motion for disqualification for further analysis by the trial court.

III.

Next, we address plaintiffs' argument that the Randolph Firm has a conflict of interest based on the potential apportionment that may occur under the CN Act. Fundamentally, as stated, defendants represented by the Randolph Firm clearly have an interest in seeking to minimize their own individual liability and maximize their co-defendants' liability. See Wolpaw, 272 N.J. Super. at 45.

In that regard, if plaintiffs' claims proceed to trial and there is a verdict against defendants, the liability and damages will have to be apportioned among defendants under the CN Act. See N.J.S.A. 2A:15-5.2(a) (directing that "the trier of fact shall make the following as findings of fact: . . . . [t]he extent, in the form of a percentage, of each party's negligence or fault"); see also Liberty Ins. Corp. v. Techdan, LLC, 253 N.J. 87, 111-12 (2023) (holding that an insurer's Fraud Act claim is a "negligence action" to which the allocation-of-fault scheme of the CN Act applies).

That apportionment presents a significant risk that conflicts may develop among defendants represented by the Randolph Firm because certain defendants may want to limit their own liability and argue that other co-defendants have a greater responsibility for the liability and damages. Consequently, if that

25

situation arises, it logically follows that the Randolph Firm's representation of one or more of its clients would be limited by the firm's responsibilities to its other clients.  See RPC 1.7(a)(2).

In seeking to minimize the liability of some defendants it represents, the Randolph Firm would have to argue that the other defendants it represents were more at fault, or perhaps more involved in the alleged fraud scheme.  See Wolpaw, 272 N.J. Super. at 45; see also Comando, 436 N.J. Super. at 215 (noting that it was a conflict of interest for one firm to negotiate beneficial terms under a lease for one client, to the detriment of the other client).

The CN Act applies to "a broad range of civil actions."  Liberty Ins. Corp., 253 N.J. at 107.  Nevertheless, to date, the New Jersey Supreme Court has not declared a per se conflict because apportionment may take place under the CN Act.  In that regard, the New Jersey Supreme Court has explained that "[o]nly in the most sensitive circumstances [has the Court] imposed a per se rule of disqualification for potential conflicts of interest."  Op. 552, 102 N.J. at 206 n.3.

We, therefore, again decline to declare a per se conflict based on the potential apportionment that may take place under the CN Act.  Allstate N.J. Ins. Co., slip op. at 17-18.  Instead, consistent with existing caselaw, on remand, the alleged conflicts must be evaluated in a "highly fact specific" manner, Grand

26

Jury, 200 N.J. at 491(quoting Harvey, 176 N.J. at 529), and "engage[] in the required 'painstaking analysis of the facts,'" Dewey, 109 N.J. at 205 (quoting Reardon, 83 N.J. at 469).

The record in this matter establishes that there are significant risks that conflicts will develop among defendants. As stated, defendants have a common interest in disputing the allegations against them, but as the case develops, they also may have an interest in seeking to minimize their own liability and maximize their co-defendants' liability. To reiterate, if plaintiffs' claims proceed to trial and there is a verdict against defendants, the liability and damages will have to be apportioned among defendants under the CN Act. See N.J.S.A. 2A:15-5.2(a) (directing that "the trier of fact shall make the following as findings of fact: . . . [t]he extent, in the form of a percentage, of each party's negligence or fault"); see also Liberty Ins. Corp., 253 N.J. at 111-12 (holding that an insurer's Fraud Act claim is a "negligence action" to which the allocation-of-fault scheme of the CN Act applies). Any settlement with certain defendants must be factored into the conflict analysis as well, based upon these principles.

IV.

In sum, we hold that there are significant risks of conflict arising among the thirty-five defendants represented by the Randolph Firm, especially in light

27

of a pending trial date. Accordingly, we vacate the September 5, 2024 order concerning the disqualification of the Randolph Firm and remand that motion for further analysis. We also vacate our May 22, 2025 order staying and adjourning the June 30, 2025 trial date.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division